931 So.2d 1027 (2006)
Lauri MANICCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1742.
District Court of Appeal of Florida, Fourth District.
June 14, 2006.
Rehearing Denied July 14, 2006.
*1028 Jason T. Forman of Jason T. Forman, P.A., Fort Lauderdale, and Steve Rossi of the Law Offices of Braverman and Rossi, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Lauri Maniccia appeals the denial of her request for credit for time she spent in a "lockdown" psychiatric hospital before trial. Because the facility is the functional equivalent of a jail and appellant's confinement there was coercive, we conclude that the trial court erred by denying appellant's request for time served.
Appellant was arrested and charged with arson of a dwelling, a first degree felony punishable by up to thirty years in prison. At appellant's first appearance, bond was set in the amount of $5,000.00, in conjunction with supervised release. Appellant was later served with a warrant based upon a violation of supervised release and held without bond.
At a hearing on appellant's motion for reinstatement of supervised release and/or bond, appellant requested the trial court to add a special condition requiring her to enter a treatment facility known as "Recovery First." Based on information that appellant had previously absconded from a voluntary drug treatment program and the trial court's concern that "Recovery First" was not a secure facility, the trial court denied appellant's motion to reinstate bond.
Appellant filed a renewed motion for pretrial release or bond. At the hearing on the motion, appellant called Dr. John Spencer, who testified that appellant suffered from a "severe mental illness" and that he had some concerns about her competency. Appellant also presented the testimony of Paul Pellinger, a certified addictions professional specializing in dual diagnoses of mental illness and addiction. He testified that Fort Lauderdale Hospital is a lockdown psychiatric hospital for patients with chemical dependency and dual diagnoses.
Appellant requested the court to release her to the custody of Fort Lauderdale Hospital. The court agreed, reasoning:
Clearly she needs some help, and I would, if this is what you say, a lockdown facility, and I have . . . a doctor *1029 and a mental health professional that are assuring me, that I would be willing to allow her to be in that facility if she were transported in a secure way so that she was released only to that facility and that she was never in any position of not being in full custody.
Without reinstating appellant's bond, the court ordered that appellant be "[r]eleased to the Fort Lauderdale Hospital, a lockdown facility only, to be transported by law enforcement." Additionally, the court ordered that a competency evaluation be conducted in order to determine her competency to stand trial. Appellant was transported by law enforcement officers to Fort Lauderdale Hospital, where she remained without bond while awaiting trial. Several times, during the course of her confinement at the facility, the court issued orders to the Palm Beach Sheriff's Office to transport appellant from Fort Lauderdale Hospital to court for pre-trial hearings.
At a plea conference, appellant requested credit for time spent in the lockdown facility, Fort Lauderdale Hospital. The state argued against granting credit, asserting that she was not entitled to credit because she had requested her placement at the hospital, she was not in the custody of the sheriff during her time at the facility, and the treatment center was not run for the purpose of punishment. Relying on Tal-Mason v. State, 515 So.2d 738 (Fla. 1987), and Pennington v. State, 398 So.2d 815 (Fla.1981), the court determined that appellant was not entitled to credit for time she spent at the hospital because she requested to be transferred there for treatment.
Before the Florida Supreme Court decided Tal-Mason, a defendant could not be credited for time spent in mental institutions awaiting trial. See Pennington, 398 So.2d at 816 ("Halfway houses, rehabilitation centers, and state hospitals are not jails."); Dalton v. State, 362 So.2d 457 (Fla. 4th DCA 1978) (denying credit for time spent in a state mental hospital awaiting trial). But, in Tal-Mason, the supreme court expanded its interpretation of the statute authorizing credit for time served in jail before sentence, section 921.161(1), Florida Statutes.[1] There, the defendant, after being found incompetent to stand trial on a murder charge, spent more than five years in custody at state mental hospitals before entering a plea. The court held that the defendant was entitled to credit for the time he spent in the institutions awaiting a finding of competency. It concluded that commitment for incompetence is a "coercive deprivation of liberty" and found that "his coercive commitment to a state institution was indistinguishable from pretrial detention in a `jail.'" Tal-Mason, 515 So.2d at 739. The court agreed with the Supreme Court of Kansas's observations:
The physical place of confinement is not important as the appellant technically continued to be in jail while held in custody at the hospitals. He was not free on bail, had no control over his place of custody and was never free to leave the hospitals. For all practical intents and purposes, he was still in jail. The court takes judicial notice that the state mental hospitals have the facilities to enforce confinement of their patients, which brings them within the dictionary definition of a "jail."
Id. at 740 (quoting State v. Mackley, 220 Kan. 518, 552 P.2d 628, 629 (1976)).
*1030 The supreme court distinguished its earlier holding in Pennington, which approved our affirmance of a trial court order denying a defendant credit for time spent in a live-in drug rehabilitation program. It noted that the drug program was a condition of the defendant's probation, voluntarily undertaken. By contrast, the defendant in Tal-Mason was involuntarily confined in the custody and control of the state. He had to remain there until he could be restored to competency. The court clarified that its announcement in Pennington that "state hospitals are not jails," 398 So.2d at 817, did not apply to the defendant's coercive commitment in a state mental institution. It described the facility where Tal-Mason was treated as the functional equivalent of prison, pointing out that "there is `no meaningful distinction... between incarceration before trial in a county jail, and state enforced confinement in a mental hospital in preparation for trial.'" Tal-Mason, 515 So.2d at 739-40 (quoting State v. Tal-Mason, 492 So.2d 1179, 1182 (Fla. 4th DCA 1986)). It noted that commitment for incompetence "infringes upon significant liberty interests in a particularly coercive manner" different from probation or community control. Id. at 739.
Following this reasoning, our courts have awarded credit for time spent in facilities only where confinement is "coercive" and such facility is the "functional equivalent" of jail. See, e.g., Comer v. State, 909 So.2d 460, 461 (Fla. 4th DCA 2005) (holding drug treatment programs entered as a condition of probation or community control are not "coercive" and therefore credit for time served may not be granted, even if such facilities are "the functional equivalent of jail"); Fernandez v. State, 627 So.2d 1, 2 (Fla. 3d DCA 1993) (holding house arrest not to be equivalent to incarceration in county jail or mental hospital). But see Tennell v. State, 787 So.2d 65 (Fla. 2d DCA 2001) (granting credit for time served in a live-in drug treatment center because it was the "functional equivalent of jail").
The state argues that this case is analogous to Roberts v. State, 622 So.2d 628 (Fla. 1st DCA 1993), rev. denied, 634 So.2d 626 (Fla.1994). In Roberts, the defendant requested placement in a private hospital, even after admitting that he required no further evaluation. The facility was not "lockdown," and the court conditioned Roberts' placement upon his being electronically monitored 24-hours per day. The first district made no finding regarding the "completeness" of Roberts' confinement; that is, whether it was, indeed, the functional equivalent of jail. Instead, it held that even if his confinement was complete, he could not be granted credit for time served because his "transfer was clearly not coercive or involuntary." Id. at 629.
Although we acknowledge that the coercive or involuntary aspect of confinement is a part of the test to determine whether a defendant should be granted credit for time spent in a facility, we believe that whether a defendant requests placement in a particular facility is irrelevant. The character of the facility (i.e., the "completeness" of confinement) is more central to our analysis. Theoretically, a defendant could request confinement in jail; yet the defendant would still be credited for time he serves there before sentence. Unlike in Roberts, where the court had to place the defendant under 24-hour electronic surveillance because he was not sent to a lockdown facility, appellant was transferred to an actual lockdown facility for treatment and a competency evaluation. The trial court expressly ordered that she be transported only by law enforcement officials during her transit to *1031 and from court. Her confinement was complete; thus, the court erred in denying her request for credit for time spent in Fort Lauderdale Hospital.
For these reasons, we reverse and remand for the trial court to award appellant credit for time spent at the Fort Lauderdale Hospital.
Reversed and Remanded.
GUNTHER and KLEIN, JJ., concur.
NOTES
[1] "A sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time she or he spent in the county jail before sentence." § 921.161(1), Fla. Stat. (2004).